STATE of Iowa, Appellee,

v.

David Earl FARLEY, Appellant.

No. 57334.

Supreme Court of Iowa.

Feb. 19, 1975.

Paul A. Mahr, Sioux City, for appellant.

Richard C. Turner, Atty. Gen., Jim P. Robbins, Asst. Atty. Gen., and Zigmund A. Chwirka, County Atty., for appellee.

Heard by MOORE, C. J., and RAWLINGS, UHLENHOPP, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

Defendant appeals his conviction by jury and sentence for breaking and entering in violation of Code § 708.8. The sole question is whether the trial court erred in overruling his motion for new trial which was grounded on an assertion of newly discovered evidence. We affirm because we find the ruling was within the discretion of the trial court.

The charge arose from a break-in of the Lincoln Market, a Sioux City grocery store, in the early morning of November 3, 1973. The store is located in the 100 block of South Rustin Street. For several hours prior to the break-in police officers Ronald Cardwell and Gerald Heibel maintained surveillance of a house occupied by a family named Lane located in the 100 block of North Rustin Street, the next block north of the one on which the store was situated. It is undisputed that defendant and his two brothers, Dennis and Darrel (Pete), were present at a party in the Lane home during the evening. The officers testified they knew the Farley brothers and saw them there. Defendant testified he did not know the officers but acknowledged he and his brothers were there.

During the period of surveillance there was considerable movement in and out of the home, and the Farleys were among those coming and going. At about 1:00 a. m. the officers left the area to change automobiles because they thought they had been observed by defendant and his brother Pete and thus had "blown their cover". The officers were gone for 20 to 25 minutes. While they were gone officer Dennis O'Keefe took over surveillance for them.

The evidence tended to show the break-in occurred during the period officers Cardwell and Heibel were absent from the area. When they returned after changing cars they saw two men walking north on North Rustin in the direction of the Lane home. As the officers' vehicle approached, the men threw objects into a ditch near railroad tracks crossing the block and fled westerly into nearby bushes. Although he could not identify these men, officer Cardwell testified he did not believe defendant was one of them. The officers circled the block and returned to the area with their vehicle headlights out. As they did so they saw a man carrying an object on his right shoulder walking north from the intersection separating North and South Rustin. From about 75 feet away they turned their headlights on and shined them directly on the man. They each testified they recognized him as defendant, wearing a brown corduroy coat and dark trousers. The man dropped what he was carrying and fled along the railroad tracks. Officer Heibel gave chase. As he did so he thought he saw one or two other persons running down the tracks. He did not catch any of them and returned to North Rustin. There he told officer O'Keefe of seeing three men running along the tracks, gave him defendant's name and description, and asked O'Keefe to position himself on the north side of the block where he could observe any attempt by the men to return to the Lane home.

In the meantime officer Cardwell found five cases of beer on the ground where the three men had been observed dropping the objects they had been carrying. He radioed a description of three men including defendant, but did not use defendant's name. He then went to the Lincoln Market and discovered it had been broken into. It was later determined that the beer found on the ground near North Rustin had been stolen from there.

Officer O'Keefe testified he went to the north side of the block. He saw two men walking in the direction of the Lane home on the north side of the street. He identified himself as an officer and told them to "freeze". One of the men stopped but the other fled. Defendant, dressed in a brown corduroy coat and dark trousers, was the one who stopped. Cardwell and Heibel

identified him as the man they had earlier seen in their headlights and whom Heibel had chased down the railroad tracks. He was the only one arrested for the break-in.

At trial defendant denied involvement in the break-in. He testified he had left the Lane home to see if he could get his truck started, and it wouldn't start. He said he began walking toward his brother-in-law's home, located nearby, for assistance, but met an acquaintance whose name he did not know who offered to help him. He said they had started back up the street toward the truck when officer O'Keefe yelled out to them and his companion fled.

Defendant also offered the testimony of his brother Dennis and three other persons who had been at the party in the Lane home. They verified his version of events up to about 1:00 a. m. Two of them said defendant left the party about that time to see about getting his truck started. By finding defendant guilty the jury indicated it believed defendant actually left the party to participate in the break-in rather than to work on his truck.

The jury was selected in the case on March 12, 1974, and the evidence was received on March 14 and March 15, 1974. After the jury returned its verdict on March 15, the court fixed sentencing for March 29, 1974. On that date defendant filed a motion for new trial, contending he had been denied a fair trial based on newly discovered evidence, a confession by defendant's brother Pete that he and another man, not defendant, had committed the offense.

A hearing was held on the motion. Defendant's brother Pete testified that defendant was not involved in the break-in and that it had in fact been committed by Pete and one Mike Garrison from Indiana. Pete testified he was the one carrying beer at the time officers Cardwell and Heibel turned their headlights on. He said he dropped the beer and took off running down the railroad tracks, returning a few minutes later to the Lane home where he stayed until about 5:00 a. m. He testified

Garrison fled in another direction and he never saw him again.

Pete also testified he had not told defendant of his involvement until March 16, 1974, the day after defendant was convicted of the offense. He lived in Sioux City, at least part of the time in the same house as defendant, during the entire period subsequent to the November 3, 1973, offense except for March 5 to March 16, when he was in Oregon in violation of the terms of his pretrial release on an unrelated felony charge. Pete disappeared again immediately after the hearing, and the State had not located him by April 8, 1974, when the motion for new trial was finally submitted.

The trial court overruled the motion and sentenced defendant. This appeal followed.

■ The general principles applicable to a motion for new trial in a criminal case based on a claim of newly discovered evidence are set forth in State v. Compiano, 261 Iowa 509, 154 N.W.2d 845 (1967). This basis for new trial is included in the statutory provision, Code § 787.3(8), which permits a new trial when a defendant has not received a fair and impartial trial. Before his motion may be sustained the defendant must show: (1) the evidence was discovered after trial and before judgment, (2) it could not have been discovered earlier in the exercise of due diligence, (3) it is material to the issue, not merely cumulative or impeaching, and (4) it would probably change the result if a new trial is granted. For a detailed explanation of each of these elements see 2 Underhill's Criminal Evidence §§ 430–438 (Fifth Ed. 1956).

■■ Motions for new trial on the basis of newly discovered evidence are not favored, should be closely scrutinized and granted sparingly. In passing on the motion the trial judge is vested with wide discretion.

■ In this case the trial court found defendant failed to carry his burden to show both that the evidence could not have been discovered earlier in the exercise of

due diligence and that it would probably change the result if a new trial was granted. Either ground, if correct, would be independently sufficient to sustain the trial court's ruling. Each ground is based on an exercise of trial court discretion. We have no reason to interfere with that exercise of discretion under the record here.

We explained the concept of due diligence in Westergard v. Des Moines Ry. Co., 243 Iowa 495, 503, 52 N.W.2d 39, 44 (1952):

"The showing of diligence required is that a reasonable effort was made. The applicant is not called upon to prove he sought evidence where he had no reason to apprehend any existed. He must exhaust the probable sources of information concerning his case; he must use that of which he knows, and he must follow all clues which would fairly advise a diligent man that something bearing on his litigation might be discovered or developed. But he is not placed under the burden of interviewing persons or seeking in places where there is no indication of any helpful evidence."

In an effort to satisfy this burden defendant argues he had no reason to suspect his brother of the crime and, even if he had suspected him, he could not have anticipated his brother's absence from the jurisdiction immediately before and during trial.

The trial court understandably found this argument unconvincing. Pete was at the party with defendant. It is reasonable to believe defendant should have interrogated those at the party as "probable sources of information concerning his case". He obviously made inquiry of his brother Dennis and three other persons who were at the party, since they all testified in his behalf. In failing to make inquiry of Pete he failed to pursue "all clues which would fairly advise a diligent man that something bearing on his litigation might be discovered or developed". Even though Pete was unavailable immediately before and during trial, he was admittedly available the previous four months.

We believe the trial court did not abuse its discretion in holding defendant failed to show he exercised due diligence to discover his brother's testimony.

Regarding the probability of a different result if a new trial was granted, the trial judge was confronted with a problem requiring evaluation of conflicting evidence. Since he saw and heard the witnesses he was in a superior position to make this evaluation. See State v. Compiano, supra, 261 Iowa at 520–521, 154 N.W.2d at 851.

Police officers were eyewitnesses to events surrounding the offense. Two of them who knew defendant and his brothers positively identified defendant as a participant in those events. It appears three men may have committed the offense. Two were never identified. The trial judge believed Pete's testimony would at best show he was one of the additional participants in the offense and would not be likely to exonerate defendant.

We hold the trial court did not abuse its discretion in making this determination.

It was not reversible error for the trial court to overrule defendant's motion for new trial.

Affirmed.