**STATE of Iowa, Appellee,**

v.

**Kenneth L. SMITH, Appellant.**

**No. 59832.**

Supreme Court of Iowa.

Feb. 22, 1978.

David E. Linquist, Mt. Ayr, for appellant.

Richard C. Turner, Atty. Gen., Thomas A. Evans, Jr., Asst. Atty. Gen., Arlen F. Hughes, County Atty., for appellee.

Considered by MOORE, C. J., and MASON, RAWLINGS, REES and UHLENHOPP, JJ.

MASON, Justice.

January 21, 1976, a Ringgold County grand jury returned an indictment accusing Kenneth L. Smith of the crime of fraudulent acts in violation of section 239.14, The Code, and charging that the said defendant obtained and attempted to obtain by means of willfully false statements and representations assistance under the aid to dependent children statute, chapter 239. He was accused of having received $1652. (This

was later amended to $1495). Trial to a jury resulted in his conviction of the crime charged. He appeals from judgment imposing sentence upon his conviction.

The charge herein was based on the fact defendant failed to include money received from Bertha Holland on his applications for assistance filed October 31, 1974, and May 5, 1975. December 19, 1974, to August 22, 1975, defendant received 11 checks from Mrs. Holland totalling $3,254.50. Defendant contended this money constituted a loan and he did not realize he had to report it on the applications. Under Iowa Department of Social Services rule loans must be reported as income unless they are used under conditions which preclude their use for current living costs. See 770–41.7(5) "e" I.A.C.

At the time of the indictment and until he was excluded from representing the State in this prosecution on May 18, Arlen F. Hughes was the prosecutor of this case, the Ringgold County Attorney and, in his private capacity, the attorney for the guardian and conservator of Bertha Holland.

Attached to the indictment were minutes of evidence received by the grand jury. No testimony was received from Bertha Holland. February 11, 1976, defendant moved for a bill of particulars. In the bill of particulars furnished in response to defendant's motion the State did not list Bertha Holland as a witness to any of the acts with which defendant was charged.

March 25 defendant filed notice to take the oral deposition of Bertha Holland and a subpoena duces tecum was issued to her. April 14 Mrs. Holland's guardian and conservator through his attorney, Mr. Hughes, filed a motion to quash the subpoena and for a protective order.

In this motion it was alleged Mrs. Holland was under twenty-four-hour-per-day supervision because she was suffering from cerebral ischemia, general arteriosclerosis, and other illnesses. The motion also contained allegations defendant and his attorney had attempted to contact Mrs. Holland and had intimidated the person supervising her. It was made clear in the motion Mrs.

Holland's business records would be made available to defendant at his request.

Attached to this motion was the affidavit of Mrs. Holland's doctor in which he explained it would not be in her best interests that she be required to submit to examination by deposition or otherwise, that any information she could give would not be reliable and that it would be injurious to her physical and mental health to be subjected to such examination.

Defendant resisted this motion alleging Mrs. Holland was a material witness to his defense. Defendant has maintained if Bertha could have testified she would have explained the checks to him were loans and that she wished to have these loans kept secret so she would not be bothered by others seeking to borrow money from her.

April 21 defendant filed a motion to set aside the indictment and a motion to dismiss the action against him. He alleged Mr. Hughes was not a proper party before the grand jury under section 336.5, The Code, 1975. No specific allegation was made in this motion but in a motion, filed the same day, to exclude Hughes from representing the State in the case, the defendant alleged Hughes was also the attorney for Mrs. Holland's guardian and conservator. It was stated section 336.5 prohibited a prosecutor from representing the State if he represented another party and that such representation would deny defendant a fair and impartial trial as guaranteed by the constitution.

Each of these motions was resisted. May 18 the court ruled on the motions. It sustained the motion to suppress the subpoena of Bertha Holland, " *   *   * with the exception that Defendant may submit written interrogatories to be answered in writing by the said Bertha Holland." It overruled the motions to set aside the indictment and to dismiss. It sustained the motion to exclude but found as follows:

" *   *   * The Court finds that there has been no conflict of interest due to the fact that the Ringgold County Attorney is also the attorney for the conservator of Bertha

Holland. The Court does find that as attorney for the conservator that Arlen F. Hughes did file Motion to Suppress for said conservator and that further, Arlen F. Hughes has represented the State of Iowa in this criminal cause of action. The Court finds that there has been no conflict of interest of a prejudicial interest to the Defendant thus far but in the interests of fully protecting all of the rights of the Defendant and further, in the interest of removing any question of an impartial prosecution which might later arise, the Motion to Exclude is therefore sustained * * ."

On May 18 defendant filed twenty interrogatories he wished answered by Mrs. Holland. The twenty questions were aimed to elicit the reason why she wrote the checks to defendant.

May 20 defendant waived his right to speedy trial for a reasonable length of time and requested a continuance so his attorney could investigate two witnesses whose names appeared on the notice of introduction of witnesses which the special prosecutor, Michael F. Travis, had filed two days earlier. He also wished the continuance so his attorney could study, when returned, the answers to the interrogatories sent to Bertha Holland.

June 21, thirty-three days after the interrogatories were filed, Bertha Holland died without ever having been presented with them. June 23 defendant filed a motion to dismiss explaining more than thirty days had elapsed since the filing of the interrogatories and they had not been answered. He asserted the answers to the interrogatories would have established beyond a reasonable doubt he was not guilty of the crime charged.

June 29 defendant filed another motion to dismiss in which he maintained that " * * * although the Defendant waived speedy trial, the failure of Bertha Holland through her attorney to answer the submitted Interrogatories within thirty days has in effect denied the Defendant, Kenneth L. Smith, a speedy trial, thereby denying the Defendant Due Process required by the Fourteenth and Fifteenth Amendments to the United States Constitution."

In the State's resistance to the motions, the special prosecutor pointed out he had contacted Mr. Hughes on more than one occasion in order to obtain answers to the interrogatories. On each occasion he had been told Mrs. Holland was unable to answer the interrogatories because of her physical health. He had made an appointment for June 23 to submit to her the interrogatories but she had died June 21. The prosecutor insisted defendant had waived speedy trial on May 20.

June 30, after a hearing on the motions to dismiss the court overruled both motions.

At 1:30 p. m. July 26 the case came to trial. After the State had presented its evidence and rested, defendant renewed his April 21 motion to set aside the indictment and motion to dismiss.

During defendant's case in chief, he called Mr. Hughes to the stand. During the course of direct examination the following incident occurred:

"Q. Did Bertha Holland ever tell you that she made a loan to Kenneth Smith?

"The WITNESS. Now, Your Honor, I would be glad to answer that question because I think the answer would be in the interest of justice here, but in all fairness to Bertha Holland and as her attorney and as attorney for that guardianship and conservatorship and presently as attorney for the estate, Your Honor, I about have to claim the privilege of attorney-client relationship.

"Besides that, I think counsel here, the special assistant Ringgold County Attorney, would want to object to it on the basis of hearsay.

"MR. TRAVIS. Your Honor, I will let you rule.

"The COURT. I think the attorney-client privilege does prevail here. Any information he might have gained while representing Bertha Holland would be a privileged communication which he could not divulge. She could waive it were she living, but she is not, of course."

Defendant contends the following questions are presented for review:

1. Did the trial court err in overruling defendant's motion to dismiss for failure of the prosecution to obtain answers to the interrogatories submitted to the witness, Bertha Holland?

2. Did the county attorney's conduct constitute suppression of evidence sufficient to violate defendant's right to due process as guaranteed by Amendment 14 of the United States Constitution?

3. Did the trial court err in finding defendant was not an indigent and in waiting to make that determination until the jury had been sworn?

■ I. Defendant contends the trial court erred in overruling his June 23 motion to dismiss for failure of the State to obtain answers to the interrogatories he submitted to Bertha Holland on May 18. He argues the State's failure to obtain the answers within thirty days deprived him of his statutory right under section 781.10, The Code, 1975, and was therefore prejudicial to him and denied him a fair trial. He observes even " * * * in a civil case where the courts are not as concerned about the time period before trial, a party has only 30 days to answer written interrogatories I.R.C.P. 126."

The only case defendant cites in support of his argument is *State v. Peterson*, 219 N.W.2d 665 (Iowa 1974). In *Peterson* defendant sought to obtain discovery by taking depositions upon oral examination of two doctors as well as all other witnesses who had appeared before the grand jury which returned the indictment in that matter. The state filed resistance to the taking of depositions. The trial court sustained the resistance. In reversing the trial court this court said at page 669:

" * * * We overrule *State v. District Court (Delaware County)* [253 Iowa 903, 114 N.W.2d 317] and now hold a defendant, by authority of § 781.10, The Code, may take discovery depositions of State's witnesses. * * * ."

In the present case the State does not dispute defendant's contention he had a right to depose the State's witnesses. The State points out Bertha Holland was not its witness. It is quite obvious, from the summaries of evidence presented to the grand jury, from the bill of particulars furnished defendant, and from the State's notice of introduction of witnesses, it did not intend to call Mrs. Holland as a witness.

Section 781.10, The Code, provides:

"A defendant in a criminal case, either after preliminary information, indictment, or information, may examine witnesses conditionally or on notice or commission, in the same manner and with like effect as in civil actions."

We find nothing in section 781.10 or *State v. Peterson* which tends to support defendant's position that the state has a responsibility in a criminal case to secure timely answers to interrogatories propounded by a defendant to a defense witness.

Defendant is apparently arguing the proper procedure under rule 126, Rules of Civil Procedure, is to dismiss an action if a party does not answer interrogatories within thirty days. Defendant's interpretation of the rule is incorrect.

In pertinent part rule 126 is as follows:

" * * * The party to whom the interrogatories are directed shall file the answers, and objections if any, within thirty days after they are filed, except a defendant may file answers or objections within forty-five days after service of the original notice upon that defendant. The court may allow a shorter or longer time. The party submitting the interrogatories may move for an order under rule 134 'a' with respect to any objection to or other failure to answer an interrogatory."

Rule 134 "a", R.C.P., provides for a motion for an order compelling discovery. If that order is not complied with sanctions are available to the court under rule 134 "b"(2).

The proper motion after a party does not answer interrogatories is a motion to compel discovery, not a motion to dismiss the

action. Defendant's contention to the contrary is without merit.

■ In his argument attacking the court's ruling on his June 29 motion defendant obliquely raises a speedy trial issue. As was noted he waived his right to speedy trial on May 20 so that his attorney could wait for the answers to the interrogatories. Any delay in his trial was obviously caused by his desire to get the answers to his interrogatories and therefore is not violative of section 795.2, The Code, 1975. *State v. Leonard*, 240 N.W.2d 690, 692 (Iowa 1976); *State v. Goff*, 244 N.W.2d 579, 583 (Iowa 1976).

Defendant makes no argument he was denied the right to question Bertha Holland. He does not argue she was not really too sick to be deposed. He does not argue the State attempted to keep him from deposing her in furtherance of an illegal motive. He does not argue the court's ruling allowing only submission of interrogatories was unjust.

Defendant was not denied his statutory right under section 781.10, The Code, 1975. His contention to the contrary is without merit.

■ II. Defendant insists the record clearly shows the prosecution tried to and succeeded in suppressing evidence favorable to defendant after he attempted to obtain such evidence. He asserts the county attorney while acting in his dual capacity as prosecuting attorney and attorney for the guardian and conservator of Bertha Holland actively kept him and his attorney from contacting a material witness by filing a motion to suppress a subpoena directed to the witness. He notes the county attorney refused to answer questions concerning the checks and relied upon attorney-client privilege to do so. He contends these actions constituted suppression of material exculpatory evidence and violated his due process rights under Amendment 14 of the United States Constitution. In regard to the claim of privilege see *Bailey v. Chicago, Burlington & Quincy Railroad Co.*, 179 N.W.2d 560, 563–564 (Iowa 1970), where the problem is fully discussed and many authorities are cited.

Because of defendant's constitutional claims this court makes "an independent evaluation of the totality of the circumstances from which the assertion of unconstitutionality arises. We review the evidence de novo. * * * [citing authorities]." *State v. Russell*, 261 N.W.2d 490, 492 (Iowa 1978).

Defendant cites *State v. Hall*, 249 N.W.2d 843 (Iowa 1977), as providing guidelines for examination of a question involving suppression of exculpatory evidence. This case does indeed provide such guidelines but it is of no assistance to defendant.

The issue in *Hall* was whether evidence in the form of grand jury testimony in the hands of the prosecution had been improperly suppressed. In the present case there was no evidence in the hands or files of the prosecution which was denied defendant. Defendant makes no allegation the State knew anything of Bertha Holland's possible testimony. Thus, this is not a situation in which the prosecution has possession or knowledge of evidence favorable to a defendant which it fails to disclose.

Even if we were to assume for purposes of argument the State knew Bertha Holland would testify the checks were loans, we find the reasoning of *Hall* destroys defendant's contention herein. In *Hall*, 249 N.W.2d at 846–847, this court stated:

"To constitute a due process violation under *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215, 218 (1963) the suppressed information must be material either to the guilt or punishment of the defendant, not merely potentially or inferentially helpful to the defense. * *

"The eighth circuit's speculation a *Brady* rule expansion might be 'in the wind' was laid to rest in *Agurs*, supra 427 U.S. [97] at 109, 96 S.Ct. [2392] at 2400, 49 L.Ed.2d [342] at 353, where the United States Supreme Court said,

" ' * * *

"'* * * The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.' (Emphasis supplied).

" * * *

"The *Agurs* court identified three situations involving the discovery, after trial, of information which had been known to the prosecution but unknown to the defense. The court noted in each situation the measure of *Brady* 'materiality' was defined in different language.

" * * *

"The second situation is characterized by a pretrial request for specific information. The *Agurs* court observed this was the case in *Brady*, noting,

" 'A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.' 427 U.S. at 104, 96 S.Ct. at 2398, 49 L.Ed.2d at 350."

Relative to the issue of materiality defendant contends Bertha Holland's testimony would have revealed the amount represented by the 11 checks involved was a loan and not income. Defendant and another witness testified the money was a loan.

Under this record, even if Bertha Holland had given testimony that the checks involved were loans made by her to defendant, this would not support a finding her testimony might have affected the outcome of the trial.

770–41.7(5) "e" I.A.C. sets forth the rule loans will be exempt from income which must be reported only if used under conditions which preclude their use for current living costs. We have examined the entire transcript of defendant's testimony. Nowhere does he contend the loans were used for expenses other than current living costs. Hence, even if the checks were loans, they should have been declared as income on his assistance applications.

Even if the record disclosed the facts which we have assumed for purposes of argument in dealing with defendant's contention and this court determined those assumed facts would justify a finding the evidence was improperly suppressed, such evidence would not be material in the constitutional sense. Under the principles recognized in *State v. Hall*, 249 N.W.2d at 845–848, its suppression would not violate defendant's due process right under Amendment 14 of the United States Constitution. However, those assumed facts do not appear in the record before us. We therefore adhere to the view expressed earlier in this division that the statements in *State v. Hall* do not aid defendant here.

Under the record as made in the trial court the county attorney's actions, if any, in suppressing the evidence did not violate defendant's right of due process.

■ It appears to the court that when this matter was submitted to the grand jury the county attorney knew or had reason to know that there might well be a conflict of interest in his representing the State as prosecutor and representing the guardian and conservator of Bertha Holland. It is true no civil action had been brought to recover from this defendant the amount loaned by Mrs. Holland. Nevertheless, it is our view the possibility of any such conflict should be avoided. In this connection see *Blanton v. Barrick*, 258 N.W.2d 306, 311 (Iowa 1977).

■ III. Defendant contends the trial court erred in finding he was not an indigent and in waiting to make that determination until after the jury was sworn.

January 27, 1976, defendant filed an application for appointment of counsel at State expense and affidavit of financial condition in support of the application. February 4 David Linquist was appointed as attorney for defendant. However, no provision was made at that point for payment of fees at public expense. July 15 defendant again, upon request of the court, filed an up-to-date application for appointment of counsel and affidavit of financial condition. July 22 the State filed a motion to deny counsel for defendant at expense of Ringgold County.

In the State's motion it contended defendant had not entered various items of income, had made incorrect statements, had a beneficiary (remainder) interest in a valuable farm, had a good enough credit rating to have secured various loans, had personal property not listed in the affidavit, and had made other inaccurate statements.

On the day of trial, July 26, the jury was picked and sworn in by 10:45 a. m. They were then excused until 1:30 when the trial began. After trial the court excused the jury for deliberation and held a hearing on the State's motion.

At the hearing the defendant testified to the following:

1. His wife worked and brought home $286.37 per month;

2. His daughter received $111.00 per month in assistance;

3. He was a self-employed painter and carpenter and had his own tools;

4. He had a lawn mower worth $40.00;

5. He had purchased a colored television on September 16, 1975;

6. He had bought a lawn mower worth $629.95;

7. He had a 1965 Mercury automobile;

8. He had borrowed $3,000.00 from Bertha Holland;

9. He had a remainder interest in one-eighteenth of a farm valued at over $160,000.

10. For his care of one Bessie Green he received $38 per month, payment of his rent, and payment of one-half his light and phone bills.

On the basis of this testimony the trial court ruled, after the jury had been instructed and was deliberating, the defendant was not an indigent.

In *Bolds v. Bennett*, 159 N.W.2d 425, 428 (Iowa 1968), this court set out the following criteria which should be employed in weighing the issue of indigency:

"Factors ordinarily to be considered are, ready availability of, (1) real or personal property owned; (2) employment benefits; (3) pensions, annuities, social security and unemployment compensation; (4) inheritances; (5) number of dependents; (6) outstanding debts; (7) seriousness of the charge; and (8) any other valuable resources not previously mentioned.

"It is, of course, understood the term 'ready availability', as here employed, denotes property, real or personal, of such nature and net value it will be immediately accepted in lieu of or as a fee by a legally qualified attorney of petitioner's choice, ready and willing to serve."

Defendant contends his defense was in some manner diminished because the trial court waited until the jury had been instructed to rule on his indigency application. In effect he argues his counsel would have presented a better defense of him if he had known whether he would be paid by the county or by the defendant. This contention is without merit.

The court's judgment, order and sentence provides, " * * * It is further Ordered that court appointed attorney fees heretofore allowed for counsel for Defendant shall be entered against the Defendant as a judgment in favor of Ringgold County, Iowa."

The court file certified to us in this matter discloses that on August 25, 1976, the trial judge entered an order on defense counsel's claim for attorney fees allowing the sum of $809.72 to be paid counsel out of the county treasury of Ringgold County. Neither side refers to this order of allowance in his written brief and argument.

The trial court by its order recognized that an attorney should not be expected to defend an accused gratuitously.

Obviously, defendant made a sufficient showing to satisfy the trial court he did not have real or personal property readily available to pay court-appointed counsel. At no point in the sentence and judgment or in the order allowing counsel fees did the trial court expressly determine defendant was indigent.

From our independent evaluation of the totality of the circumstances we conclude defendant established indigency. *State v. Russell*, 261 N.W.2d at 490.

"To qualify for appointed counsel, it is not necessary that an accused person be utterly destitute or totally insolvent. Indigence is a relative term, and must be considered and measured in each case by reference to the need or service to be met or furnished. In connection with the constitutional right to counsel, it properly connotes a state of impoverishment or lack of resources which, when realistically viewed in the light of everyday practicalities, effectually impairs or prevents the employment and retention of competent counsel." *Morgan v. Rhay*, 78 Wash.2d 116, 119, 470 P.2d 180, 182.

The question presented is whether the trial court had authority to tax fees paid to court-appointed counsel as a part of the costs assessed against defendant. Various phases of this problem have been considered by this court. See *Woodbury County v. Anderson*, 164 N.W.2d 129 (Iowa 1969); *State v. Ronek*, 176 N.W.2d 153, 158 (Iowa 1970); *State v. Rogers*, 251 N.W.2d 239 (Iowa 1977) and at 246 (Uhlenhopp, J., dissenting).

We hold the trial court had no authority to tax fees paid to court-appointed counsel as a part of the costs and that the direction of the trial court to tax such fees as part of the costs was error, but without prejudice to defendant.

With directions to the trial court to retax costs without the inclusion of counsel fees the case is—Affirmed and remanded.