STATE of Iowa, Appellee,

v.

Michael Otto GILROY, Appellant.

No. 65184.

Supreme Court of Iowa.

Dec. 23, 1981.

L. Jay Stein, Iowa City, for appellant.

Thomas J. Miller, Atty. Gen., John P. Messina, Asst. Atty. Gen., and Jack W. Dooley, County Atty., for appellee.

Considered by REYNOLDSON, C. J., and McCORMICK, McGIVERIN, LARSON, and SCHULTZ, JJ.

McGIVERIN, Justice.

Vincent R. Lalla was killed on March 12, 1979. His body was found at the Moose Lodge in Iowa City. His death was caused by two wounds inflicted with a shotgun. On November 15 defendant Michael Otto Gilroy was charged with first-degree murder in the slaying. §§ 707.1, .2, The Code 1979. Defendant was found guilty as charged by a jury and sentenced. He appeals and we affirm.

The State's evidence showed that defendant entered the Moose Lodge with a shotgun, killed Lalla, who was the manager, and then went to his ex-wife's house and hid the shotgun.

Defendant's appeal raises seven issues:

1. Did trial court err in requiring $50,000 cash bail rather than allowing defendant to post $15,000 cash plus a property bond?

2. Did trial court err in finding defendant non-indigent and appointing counsel pursuant to section 336B.6, The Code?

3. Did trial court err in the procedure used to grant several undercover law enforcement officers and defendant's minor daughter exclusion from expanded media coverage?

4. Should a parent-child testimonial privilege be recognized in Iowa?

5. Did trial court err in overruling defendant's motion for mistrial based upon prosecutorial misconduct?

6. Did trial court err in failing to submit defendant's proposed interrogatories to the jury pursuant to Iowa R.Crim.P. 21(2)?

7. Did trial court err in overruling defendant's motion for new trial on the basis of newly discovered evidence?

We find that each issue must be answered in the negative and therefore defendant's conviction affirmed.

I. *Propriety of bail.* Defendant contends trial court erred by fixing his pretrial bail at $50,000 cash rather than permitting the posting of a real estate bond plus $15,000 cash. Being unable to deposit the ordered bail, defendant remained in jail before and during trial.

Bail was initially fixed in this matter at $150,000 on November 15, 1979. On defendant's motion the district court subsequently modified the order relative to pretrial bail by providing that defendant could be released from custody to the supervision of the Department of Correctional Services upon posting a cash bond in the sum of $50,000. Defendant later moved to amend the already modified bail requirement order to allow relatives of defendant to post real estate worth $50,000 and, if necessary, an additional $15,000 cash as bail. Trial court refused to further modify its bail order.

Defendant took an appeal of the pretrial order imposing conditions of release pursuant to section 811.2(6)(b), The Code 1979. On January 24, 1980, a division of three justices acting for this entire court affirmed the district court's order. § 684.2, The Code.

Section 811.2(6)(b) provides, in pertinent part:

> In any case in which a court denied a motion . . . to amend an order imposing conditions of release . . . an appeal may be taken from the district court. The appeal shall be determined summarily, without briefs, on the record made. However, the defendant may elect to file briefs and may be heard in oral argument, in which case the prosecution shall have a right to respond as in an ordinary

appeal from a criminal conviction. . . . Any order so appealed shall be affirmed if it is supported by the proceeding below. . . .

Section 811.2(6)(b) establishes a direct pretrial appeal to this court as the remedy for allegedly illegal conditions of release. Defendant has availed himself of this remedy, and we have nothing further to review in that regard.

II. *Finding of non-indigency and section 336B.6 appointment of counsel.* Defendant asserts that trial court erred in finding that he was financially able to secure legal counsel but that he refused to do so, and in subsequently appointing two attorneys to represent him pursuant to section 336B.6, The Code. We disagree.

Prior to defendant's arrest his mother had secured counsel for him by payment of a $1,000 retainer to two attorneys. After services of counsel exhausted this sum, defendant applied for appointment of counsel at public expense. Iowa R.Crim.P. 26. The court found that defendant had failed to establish his indigency and denied appointment of counsel. Defendant then amended his application to include the option of appointment of counsel pursuant to section 336B.6.[1] The court finally found that defendant, although financially able to secure counsel, refused to do so and therefore appointment of counsel was necessary pursuant to section 336B.6. The court appointed the two attorneys who had been representing defendant under the prior retainer arrangement. After trial, upon court order the county paid defendant's counsel $12,775.93. Therefore, our decision will determine whether the county will be able to attempt to recover sums it pays to court appointed counsel from defendant's assets. Defendant wishes to prevent his

---

1. Section 336B.6, The Code, provides:

   If a court finds that a person desires legal assistance, and is financially able to secure counsel but refuses to employ an attorney, the court shall appoint an attorney to represent such person at public expense. The attorney fee paid by the state or county in such cases shall be taxed as part of the court costs against the person receiving the legal assistance, and the state or county shall be reimbursed for said fee when the court costs are paid.

   Chapter 336B has been repealed. 1981 Iowa Acts, 69 G.A. Ch. 117, § 1244. The procedure and substance of section 336B.6, however, have been preserved. 1981 Iowa Acts, 69 G.A. Ch. 117, § 778(3).

attorney fees from being a lien on his assets.

Upon our independent evaluation of the totality of circumstances in this case, we conclude trial court properly found defendant was financially able to secure counsel. § 336B.6. Defendant owned two major assets: a one-fourth interest in an Iowa City residential dwelling with an estimated equity value of $46,000 to $48,000; and a remainder interest in one-third of a one hundred acre farm, subject to the life estate of his sixty year old mother. He also owned a motor vehicle worth approximately $100 and had a $15 balance in a bank account. Defendant owed $3,575.03 to the Hills Bank and Trust Company, $1,300 to his mother ($1,000 of which may have been for the retainer paid), and $200 to the clerk of court for delinquent child support payments. He also would owe continuing child support.

In the past the factors we have weighed to analyze indigency were:

(1) real or personal property owned; (2) employment benefits; (3) pensions, annuities, social security and unemployment compensation; (4) inheritances; (5) number of dependents; (6) outstanding debts; (7) seriousness of the charge; and (8) any other valuable resources not previously mentioned.

*Bolds v. Bennett,* 159 N.W.2d 425, 428 (Iowa 1968); *see also State v. Smith,* 262 N.W.2d 567, 573 (Iowa 1978). The financial assets must be readily available. Ready availability denotes property "of such nature and net value it will be immediately accepted in lieu of or as a fee by a legally qualified attorney of petitioner's choice, ready and willing to serve." *Bolds,* 159 N.W.2d at 428.

Section 336B.6 was enacted by the legislature in 1970, 1970 Acts, 63 G.A. Ch. 1171, § 6, and was not available to a trial court faced with appointing counsel when we considered the criteria for indigency stated in *Bolds.* That statute also was not cited or considered in the *Smith* case, on which defendant relies.

We believe that the legislature intended section 336B.6 to apply to cases such as the present one, where a defendant with little present income or liquid assets has substantial assets that will be saleable sometime in the future, if not now. The practical problem comes in getting an attorney to presently accept such assets as a fee. Some attorneys may be willing to accept such assets as a fee. Defendant's attorneys were not. We conclude that defendant's assets were of such value that he was "financially able to secure counsel" for the purposes of section 336B.6. Section 336B.6, rather than the *Bolds* criteria, applies to the present factual situation. In this way defendant's attorney, who does not wish to accept defendant's assets as a fee, can be promptly paid for his services by the county. The county then can ultimately recover its payment when the court costs are paid, or it could levy on defendant's assets to satisfy the court costs.

We hold that trial court correctly determined defendant was financially able to secure counsel and in appointing counsel under section 336B.6.

III. *Propriety of exclusion of witnesses from expanded media coverage.* Defendant contends that trial court erred in granting four undercover law enforcement officers exclusion from expanded media coverage without a hearing to establish good cause for such exclusion. There was no error.

On January 1, 1980, Canon 3 A(7) of the Iowa Code of Judicial Conduct was suspended and Revised Canon 3 A(7) substituted therefor to allow expanded media coverage of judicial proceedings on an experimental basis. *State v. Webb,* 309 N.W.2d 404, 408 (Iowa 1981). Revised Canon 3 A(7) provides:

Subject at all times to the authority of the presiding judge to control the conduct of proceedings before the court to ensure decorum and prevent distractions and to ensure the fair administration of justice in the pending cause, electronic media and still photography coverage of public judicial proceedings in the trial and appellate courts of this state shall be allowed in accordance with rules of proce-

dure and technology promulgated by the Supreme Court of Iowa.

Rule 2(c) states: "Such media coverage of a witness may be refused by the judge upon objection and showing of good cause by the witness." Rule 3(c) provides:

A party to a proceeding objecting to expanded media coverage under Rule 2(b) shall file a written objection, stating the grounds therefor, at least three days before commencement of the proceeding. All witnesses shall be advised by counsel proposing to introduce their testimony of their right to object to expanded media coverage, and all objections by witnesses under Rule 2(c) shall be filed prior to commencement of the proceeding.

All objections shall be heard and determined by the judge prior to commencement of the proceedings. Time for filing of objections may be extended or reduced in the discretion of the judge, who may also in appropriate circumstances, extend the right of objection to persons not specifically provided for in these rules.

Pursuant to rule 3(c), several witnesses filed written objections to expanded media coverage of their testimony. On March 20, 1980, the Iowa Department of Public Safety filed a written objection to expanded media coverage in behalf of Division of Criminal Investigation undercover agents J. D. Smith, Mike Dooley, Wade Kisner and Rick Benson. The reason for the objection was that any photographs or televised coverage of the agents would jeopardize pending and future undercover investigation by these officers in eastern Iowa.

On March 24 Laurie and Sherry Gilroy, daughter and ex-wife, respectively, of defendant, objected to expanded media coverage. Laurie's justification was that media coverage would bring "an abnormal amount of pressure" to bear upon her. Defendant's ex-wife objected because her "testimony is directly related to [her] daughter's."

On April 9 T. T. Bozek, M. D., the Johnson County Medical Examiner, filed a written objection alleging use of photography and cameras would be an invasion of privacy.

On April 10 two persons filed written rule 3(c) objections to expanded media coverage. Sergeant Robert W. Carpenter of the Johnson County Sheriff's Department objected on the ground that expanded media coverage would jeopardize his current and future undercover assignments. David Leroy Adams, who was incarcerated in the Johnson County Jail, objected on the grounds of unwanted publicity and possible retribution to himself and his family.

On April 14 before the trial commenced, trial court conducted a hearing on the nine rule 3(c) objections. Attorneys for defendant and his daughter and ex-wife were heard. The prosecutor was present but did not speak. Defendant did not attempt or request to cross-examine any of the objecting witnesses or to present evidence. Rather, he objected to excluding any of the law enforcement officers "without a proper hearing, certainly, and establishment of good cause."

We find that defendant received a proper hearing under the rule 3(c) requirement that objections be "heard and determined." The absence of a factual challenge to the assertions of the objecting witnesses was of defendant's own making. He cannot now be allowed a second opportunity to make factual inquiry.

Trial court ruled that three of the DCI agents, Sergeant Carpenter and Laurie Gilroy should be excluded from various degrees of expanded media coverage.[2] We find the protection of effective and necessary law enforcement processes is a sound basis for the exercise of trial court's discretion in exclusion of the undercover law enforcement officers in this case. Defendant has waived his challenge on appeal as to the exclusion of Laurie Gilroy pursuant to Iowa R.App.P. 14(a)(3).

---

**2.** The court overruled the rule 3(c) objections of one DCI officer, the medical examiner, David Adams and Sherry Gilroy. The three DCI officers were subject to audio but not television coverage.

Trial court found good cause, after hearing, to exclude the officers. We hold trial court followed the procedure prescribed by Revised Canon 3A(7) and that good cause existed for the exclusions made.

IV. *Parent-child qualification and privilege.* At trial, defendant objected when his daughter, Laurie Gilroy, was called as a witness on behalf of the State. He asked the court to recognize a "family privilege" and exclude her testimony. The objection was not precise enough to enable us to ascertain whether he urged adoption of a parent-child disqualification rule by analogy to section 622.7, The Code, or a parent-child communication privilege by analogy to section 622.9, or both. Defendant's brief is similarly unclear although it tends to focus on a privilege for communications.[3] We analyze both theories, find neither merits adoption, and find no error on this issue.

■ A. *Disqualification of witness based on parent-child relationship.* Section 622.7 provides: "Neither the husband nor wife shall in any case be a witness against the other, except: [in four cases not applicable here]" Defendant argues by analogy that this disqualification should be extended to the parent-child relationship. We disagree. First, absent statute, we should not recognize such a qualification. *See generally,* C. McCormick, *Evidence* § 77 at 156 (2nd ed. 1972). *See also, State v. Henderson,* 268 N.W.2d 173, 178 (Iowa 1978) (§ 622.7 exclusion not extended to signature and photograph of wife). Second, despite the statutory adoption of the husband-wife disqualification, a parent-child testimonial disqualification has never been recognized in any respect in our law. II J. Wigmore, *Evidence* § 600 at 730–31 (3rd ed. 1940).

B. *Parent-child communication privilege.* Section 622.9 provides: "Neither husband nor wife can be examined in any case as to any communication made by the one to the other while married, nor shall they, after the marriage relation ceases, be permitted to reveal in testimony any such communication made while the marriage subsisted." Defendant contends that this testimonial privilege should be extended to communications between parents and children. We disagree.

First, we should not recognize such a privilege apart from statutory authority. *See generally, McCormick,* § 77 at 156. *See also State v. Pepples,* 250 N.W.2d 390, 394 (Iowa 1977) (§ 622.9 privilege not extended to communication of spouses heard by third parties). Second, the only existing authority for adopting such a privilege is *People v. Fitzgerald,* 101 Misc.2d 712, 422 N.Y.S.2d 309 (1979), an opinion authored by a Westchester County trial court. In *Fitzgerald* the court adopted a parent-child confidential communication privilege based upon the United States and New York constitutions. *Id.* at 716–17, 422 N.Y.S.2d at 312. That case is not applicable to the present case which has no confidential communications between defendant and daughter which can be placed under such privilege. Laurie's main testimony was that defendant hid a shotgun and coat at her home shortly after the murder. It further revealed that defendant only communicated with her on the day of the homicide by: (1) asking for two sacks; (2) telling her to go to her room; and (3) telling her goodbye as he left the house.

We decline to accept defendant's invitation to create a common law parent-child testimonial privilege.

V. *Motion for mistrial based upon prosecutorial misconduct.* Defendant contends trial court erred in overruling his motion for

3. Defendant's lack of precision may have been justified. "The history of the privilege not to testify against one's wife or husband is involved, like that of civil parties, in a tantalizing obscurity. That it existed by the time of Lord Coke is plain enough, but of the precise time of its origin, as well as the process of thought by which it was reached, no certain record seems to have survived. What is a little odd is that it comes into sight about the same time as the disqualification of husband and wife to testify on one anothers behalf, for the two have no necessary connection in principle, and yet they travel together, associated in judicial phrasing, from almost the beginning of their recorded journey." VIII J. Wigmore, *Evidence* § 2227 at 211 (3rd ed. 1940).

mistrial based upon alleged prosecutorial misconduct. We find no error.

The alleged misconduct arose during the re-direct examination by the State of James Charles Fackler, who worked with defendant and Michael Murphy, one of the State's principal witnesses. The State and the defense had questioned Fackler about the use of controlled substances by employees of the Better Cab Company in Iowa City where defendant worked at the time of the murder. The State began to delve into whether the defendant used drugs:

Q: Mr. Fackler, to your knowledge, does the defendant, Michael Gilroy, use controlled substances?

Mr. Robinson [defense counsel]: Excuse me. I object to that as beyond the scope of cross-examination. It's irrelevant.

The Court: It's sustained on that ground.

Q: Have you ever seen the Defendant, Michael Gilroy, with controlled substances?

Mr. Robinson: Same objection.

The Court: It's sustained.

\* \* \* \* \* \*

Q: Do you know if Michael Gilroy used controlled substances?

Mr. Robinson: Your Honor, I urge the same objection.

The jury was then taken out and defendant moved for a mistrial based on the ground that "the prosecution is trying to get inadmissible evidence in the third time. The jury has now heard it, heard it several times." Trial court overruled the motion for mistrial and sustained the objection. The jury returned and examination of Fackler was completed.

In his appeal defendant characterizes his motion for mistrial as being based upon prosecutorial misconduct. "The rule is that misconduct of a prosecutor is ground for reversal only if it deprives the accused of a fair trial. The trial court is vested with wide discretion in such matters. We reverse only upon a showing that that discretion was abused." *State v. Wright*, 309 N.W.2d 891, 893 (Iowa 1981).

■ To prevail on a claim that a defendant has been denied a fair trial by prosecutorial misconduct, defendant must show the misconduct and that defendant was prejudiced by it. *State v. Love*, 302 N.W.2d 115, 119 (Iowa 1981). We find defendant has shown neither here and, therefore, that trial court did not abuse its discretion by overruling the motion for mistrial.

■ A. *Prosecutorial misconduct.* Because Fackler did not answer the State's three questions on Gilroy's drug use, defendant necessarily argues that the mere asking of such questions comprises prosecutorial misconduct. We believe not. Generally, there can be no reversal on the sole ground of questions asked unless bad faith of the prosecutor is shown. *Love*, 302 N.W.2d at 121; *cf., State v. Johnson*, 222 N.W.2d 483, 486–88 (Iowa 1974) (motion for mistrial should have been granted where State attempted, with four questions to which objections were sustained, to pursue inquiry into defendant's involvement in other crimes after hearing on motion in limine made clear such inquiry was impermissible). Trial court properly found no bad faith here. The issue of drug use had been previously delved into, without objection, during the State's opening argument, the examination of Michael Murphy and the defendant's cross-examination of Fackler. Murphy had previously testified that defendant asked him to borrow a car on the day of the murder "to move some drugs."

B. *Prejudice to defendant.* The three questions the State asked Fackler did not prejudice the defendant so as to deprive him of a fair trial. First, there were numerous interjections, without objection, of the issue of drug use into this trial, before and after the testimony by Fackler. The three questions added little to the breadth of that evidence.

Second, Fackler did not answer the three questions concerning defendant's drug use. We have found absence of prejudice in the past from unanswered improper questions. *State v. Barrett*, 197 Iowa 769, 771, 198 N.W. 36, 37 (1924); *State v. Townsend*, 191 Iowa 362, 368, 182 N.W. 392, 394 (1921).

*Contra, State v. Moon*, 167 Iowa 26, 37–39, 148 N.W. 1001, 1005–06 (1914). In the present case there is a lack of prejudice and we find no abuse of discretion by trial court in its denial of defendant's motion for mistrial.

**VI.** *Iowa R.Crim.P. 21(2) interrogatories.* Defendant contends trial court erred in refusing to submit two requested interrogatories to the jury pursuant to Iowa R.Crim.P. 21(2). We disagree.

Rule 21(2) provides:

[The jury] must also return with the general verdict answers to special interrogatories submitted by the court upon its own motion, or at the request of the defendant in prosecutions where the defense is an affirmative one, or it is claimed any witness is an accomplice, or there has been a failure to corroborate where corroboration is required.

Defendant requested six instructions to be given to the jury, two of which were interrogatories. The two interrogatories asked whether Michael Murphy or David Godsey either committed the offense or knowingly aided and abetted in its commission. The State resisted the interrogatories and trial court refused to give them to the jury.

Defendant's argument, essentially, is that rule 21(2) required the court to give the two interrogatories to the jury. He asserts that his proposed interrogatories claimed that Murphy or Godsey committed the offense and therefore presented an affirmative defense and that they also alleged Murphy and Godsey were accomplices of each other in committing the offense. Neither characterization of the interrogatories is correct. First, the contention that Murphy or Godsey committed the offense is not an affirmative defense. Second, the interrogatories did not allege that Murphy or Godsey were accomplices of each other. The limited mandate of rule 21(2) is not applicable in this case.

Neither was it an abuse of discretion for trial court to refuse defendant's instructions. "It is the duty of the trial court, without request therefor, to fairly present the issues and the law of the case to the jury in order that they may have an intelligent conception of the questions for decision." *State v. Baker*, 246 Iowa 215, 230, 66 N.W.2d 303, 311 (1954). We believe trial court complied with that duty.

Defendant's interrogatories, to the extent they asked whether Murphy or Godsey committed the offense, were properly excluded because the instructions given the jury necessarily covered that theory. Instruction 12 dealt with whether defendant committed the elements of first-degree murder. No instructions on the theory that defendant aided and abetted another person were given. A jury finding that defendant committed the offense implies a finding that no other person committed the offense. "A court is not required to instruct both on the affirmative and the negative of a proposition." *Baker, id.* at 231, 66 N.W.2d at 312. *See Johnson v. Mutual Life Insurance Co. of N. Y.*, 253 Iowa 1218, 1230, 115 N.W.2d 825, 832–33 (1962) (In interpreting Iowa R.Civ.P. 206, refusal of instruction proper because question requested by party "inheres in the case itself, and the decision by the jury in the case answers the question.").

Defendant's interrogatories, to the extent they suggested Murphy or Godsey aided and abetted in the offense were properly excluded. First, there was no evidence on the record that Godsey aided or abetted in the commission in the offense. "[A] trial court is not required to instruct the jury on any issue which finds no evidentiary support in the record." *State v. Scovill*, 224 N.W.2d 221, 223 (Iowa 1974). There was, however, some evidence that Murphy may have aided and abetted the commission of the offense. Second, at trial neither the State nor the defendant by their evidence, or theories presented, contended that defendant aided and abetted another person in the commission of the offense. The State's evidence and theory was that defendant shot and killed the victim.

Defendant's theory was that Murphy or Godsey or the two of them together committed the killing. In fact, defendant testi-

fied that at the time of the homicide he was working on his motor vehicle in the parking lot of his place of employment, which was a considerable distance from the Moose Lodge where the victim was shot. He stated he had no part in the killing. Therefore, a question of whether Murphy or Godsey were aiders and abetters to defendant was irrelevant to the theories under which the parties tried the main issue of whether defendant was guilty of the killing. "It is axiomatic a jury must be instructed on the law applicable to facts supported by the evidence and shall be so instructed if evidence is admitted which supports *some involved issue.*" *Scovill,* 224 N.W.2d at 223 (emphasis added).

We conclude trial court did not err by refusing to submit these interrogatories to the jury.

VII. *Motion for new trial.* Defendant contends trial court erred in overruling defendant's motion for new trial on the basis of newly discovered evidence. We find no error.

The jury returned a verdict of guilty on April 25, 1980. Sentencing was set for May 22. Defendant moved for a new trial on May 16. On May 21 he amended the motion to include the grounds of newly discovered evidence pursuant to Iowa R.Crim.P. 23(2)(b)(8). Trial court denied the motion.

The newly discovered evidence was obtained in a deposition of Melody MacDuffee taken on May 21. She had not testified at the trial. At the time of defendant's arrest in November 1979 MacDuffee worked part-time with defendant and David Godsey at the Better Cab Company and was dating Godsey. On the night of defendant's arrest, Godsey came to the King Depot, a bar in Iowa City, where MacDuffee was employed as a part-time bartender and waitress.

In the deposition she recited the dialogue at the bar between Godsey and herself. "[H]e seemed very nervous and upset . . . I asked him why. He said he was afraid he would be the next to be arrested." MacDuffee testified Godsey said, "if I asked you to right now, would you go away with me?" She replied, "Why are you thinking of running? Why should you be afraid in this?" He replied, "Because I did it."

MacDuffee continued:

I reacted with disbelief because it seemed way off from what I knew of him and he—I responded just by saying 'Dave,' disbelievingly. He said, 'I can tell from your reaction that you don't believe me capable of doing such a thing and that's what I needed to know.' I said 'you were teasing me in other words.' He said, 'Yes' or something to that effect.

MacDuffee later stated she felt Godsey was playing a game when he "confessed" and that she did not take it seriously as a confession in any form. She said Godsey was always playing games with people to test their reactions. The rest of her testimony corroborated the testimony of Godsey and Michael Murphy given at trial as to defendant's involvement in the murder.

Trial court overruled defendant's motion for a new trial on May 22 indicating that Defendant had not established that the newly discovered evidence would probably change the result if a new trial was granted. We agree with trial court.

Motions for new trial may be granted:

When the defendant has discovered important and material evidence in his or her favor since the verdict, which the defendant could not with reasonable diligence have discovered and produced at the trial. A motion based upon this ground shall be made without unreasonable delay and, in any event, within two years after final judgment, but such motion may be considered thereafter upon a showing of good cause.

Iowa R.Crim.P. 23(2)(b)(8).

We stated the showing a defendant must make to prevail on a motion for new trial on the basis of newly discovered evidence in *State v. Farley,* 226 N.W.2d 1 (Iowa 1975). There we said defendant must show: (1) the evidence was discovered after trial and before judgment; (2) it could not have been discovered earlier in the exercise of due diligence; (3) it is material to the issue, not

merely cumulative or impeaching; and (4) it would probably change the result if a new trial is granted. *Id.* at 3. *Farley*, however, interpreted section 787.3(8), The Code 1973, which provided for new trials: "When from any other cause the defendant has not received a fair and impartial trial."

Iowa R.Crim.P. 23(2)(b)(8) of the Iowa Criminal Code, effective January 1, 1978, is an apparent codification of the *Farley* standard, except that the motion may be made after judgment. *Cf. State v. Sims*, 239 N.W.2d 550, 554–55 (Iowa 1976) (In the postconviction relief situation under section 663A.2(4), The Code, the applicant must show the newly discovered evidence was discovered after the criminal judgment.). Defendant asserts the fourth element of *Farley* has been abandoned by the "important and material" element of rule' 23(2)(b)(8). We disagree.

The new rules of criminal procedure are basically an extension and restatement of the pre-existing rules. *Fryer v. Scurr*, 309 N.W.2d 441, 443 (Iowa 1981); *State v. Dohrn*, 300 N.W.2d 162, 163 (Iowa 1981). The codification of the *Farley* rule has been commented upon:

> [T]he use of newly discovered evidence will now serve as a motion for a new trial. Under the prerevised law, this was a ground for a post-conviction remedy, section 663A.2(4). With this change, the legislature has elected to use this ground for a motion for new trial. This will allow the criminal case to be used, rather than a new equity case under a post-conviction remedy.

J. Roehrick, *The New Iowa Criminal Code: A Comparison*, at 634 (1977). Thus, rule 23(2)(b)(8) is not a change from the *Farley* analysis, but rather is a codification of the practice of allowing motions for new trial on the grounds of newly discovered evidence. We hold that the last three elements of *Farley* must still be shown by defendant to prevail on a rule 23(2)(b)(8) motion for new trial.

"Motions for new trial on the basis of newly discovered evidence are not favored, should be closely scrutinized and granted sparingly. In passing on the motion the trial judge is vested with wide discretion." *Farley*, 226 N.W.2d at 3. "Regarding the probability of a different result if a new trial was granted, the trial judge was confronted with a problem requiring evaluation of conflicting evidence. Since he saw and heard the witnesses he was in a superior position to make this evaluation." *Id.* at 4. Without extending this opinion, we believe there was extensive evidence of defendant's guilt sufficient to support the discretion of the trial judge in overruling defendant's motion on the basis stated by the court. We find no abuse of discretion in the trial court's ruling on defendant's motion for new trial pursuant to rule 23(2)(b)(8).

We have considered all of defendant's contentions, whether or not specifically discussed, and find them without merit. The conviction is affirmed.

AFFIRMED.