STATE of Iowa, Appellee,

v.

Jimmy Lee ALLEN, Appellant.

No. 69464.

Supreme Court of Iowa.

May 16, 1984.

Charles L. Harrington, Appellate Defender, Linda Del Gallo, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Steven M. Foritano, Asst. Atty. Gen., and Dan L. Johnston, County Atty., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, LARSON, CARTER, and WOLLE, JJ.

CARTER, Justice.

Defendant, Jimmy Lee Allen, appeals from conviction and sentence for murder in the first degree as specified in Iowa Code sections 707.1 and 707.2 (1981). His conviction stems from an alleged participation in the robbery and murder of Clifford Welling at Welling's home in Des Moines on March 5, 1982.

Welling's body was found lying in a pool of blood in the living room of his home on the morning of March 6, 1982 by his broth-er. The medical examiner who testified for the State at defendant's trial determined that the cause of death was loss of blood from multiple stab wounds in the neck, chest, abdomen and back. The victim had also been severely beaten about the head and face.

Footprints found near the victim's residence had tread patterns matching defendant's shoes. A fingerprint identified as being that of the defendant was found on the telephone in the victim's home. The other evidence linking defendant with the crime was the testimony of Daniel Reimers, an alleged accomplice in the crime.

Reimers testified that he, defendant, and defendant's brother, Billy Allen, had learned that Clifford Welling, who lived alone, frequently carried large sums of cash on his person from a used car business he operated. They devised a plan to wait outside Welling's home until he returned and then rob him. Reimers testified that when the trio arrived at Welling's home for that purpose, lights were on and he noticed Welling was already in the house.

Reimers testified that the plan was then changed. Defendant agreed to go to the door, knock, and ask to use the telephone. The other two then planned to force their way into the house. Reimers testified that Billy Allen said before defendant went to the door that if Welling got a good look at any of them, he would have to be killed.

According to Reimers, defendant was admitted to the house by Welling before the other two participants could rush the door. As a result, they waited until Welling opened the door to let the defendant out after he had used the telephone. At this time, Billy Allen and Reimers forced their way into the house. Reimers testified that the defendant and Billy Allen forced Welling into the living room and began beating him while Reimers went upstairs to check for valuables. He testified that Billy Allen later came upstairs with a bloody knife and said that he had stabbed the victim. Soon thereafter the trio departed the victim's home with the victim's billfold and a handgun Reimers had taken from the upstairs

area. Reimers testified that defendant upon leaving the house returned briefly to attempt to wipe his fingerprints off the telephone.

Defendant's testimony at the trial was substantially at variance with that of Reimers. He testified that he was involved with Reimers and Billy Allen in planning a burglary, not a robbery. He testified that it was not known whether Welling was home and that he went to the door to determine whether anyone was on the premises.

Defendant stated that he was admitted to the Welling house by the victim and used the telephone. Upon his leaving, Reimers and Billy Allen burst into the house and attacked Welling. Defendant testified that he stood on the porch while this was happening, participated in no way in the attack upon the victim, and had not anticipated that it would occur. The jury after hearing this testimony found defendant guilty of murder in the first degree.

After trial, defendant apparently learned of certain statements which Reimers had made to one Ronald Ratigen, with whom Reimers shared a cell in the Polk County jail following his arrest for the Welling murder. A motion for new trial was filed by defendant on the ground that certain of these statements were newly discovered exculpatory evidence which could change the result of defendant's trial.

At the hearing on the motion for new trial, Ratigen testified that Reimers had stated while in the Polk County jail that he was there "for killing the old man that sells cars in Des Moines." Ratigen further testified that when he asked Reimers why the killing took place, the latter's response was "[Reimers] said he just panicked. It wasn't supposed to happen that way." The trial court overruled the motion for new trial.

On appeal, the defendant contends that the trial court erred in not granting him a new trial based upon the exculpatory nature of the statements made by his principal accuser to Ratigen. In addition, he contends that the trial court erred in admitting over his objection several inflammatory photographs of the victim's dead body,

and in not granting his motion for directed verdict. Finally, he contends that he was denied his constitutional right to effective assistance of counsel. We consider these claims separately and affirm defendant's conviction and sentence.

I. *Claim of Newly Discovered Evidence.*

To prevail on a motion for a new trial based on newly discovered evidence, we have held that a defendant must show: (1) that the evidence was discovered after the verdict; (2) that it could not have been discovered earlier in the exercise of due diligence; (3) that the evidence is material to the issues in the case and not merely cumulative or impeaching; and (4) that the evidence probably would have changed the result of the trial. *State v. Gilroy*, 313 N.W.2d 513, 521–22 (Iowa 1981); *State v. Farley*, 226 N.W.2d 1, 3 (Iowa 1975). The district court's order denying the motion for new trial in the present case determined that the showing made by defendant failed to satisfy the third and fourth elements which we have listed.

Our review of that order is governed by the standards recognized in *Gilroy*, 313 N.W.2d at 522, wherein we stated:

Regarding the probability of a different result if a new trial was granted, the trial judge was confronted with a problem requiring evaluation of conflicting evidence. Since he saw and heard the witnesses, he was in a superior position to make this evaluation.

Judged by the foregoing standards, we find that Ratigen's testimony could only have served as impeachment of a nonparty witness.

Such use of prior inconsistent statements is not substantive evidence. Moreover, the statement in question is in no way a measure of defendant's involvement in the crime, a circumstance of which Ratigen conceded at the hearing he was not made aware. The trial court did not err in denying the defendant's motion for new trial based on newly discovered evidence.

II. *Photographs of the Victim.*

A total of nine photographs of the victim were admitted in evidence as part of the

State's case. The photographs to which objection was made on the ground that they were more prejudicial than probative involved views of the victim's body after it had been cleaned of blood and prior to the autopsy. While all photographs of dead bodies tend to be gruesome, *see State v. Lass*, 228 N.W.2d 758, 771 (Iowa 1975), the photographs to which objection was lodged were far less so than the crime scene photos admitted into evidence without objection.

The admission of photographs of the victim in a homicide case is ordinarily a matter lying within the discretion of the trial court. *E.g., State v. Fryer*, 243 N.W.2d 1, 7 (Iowa 1976). Ordinarily the test of admissibility of photographs is relevancy and materiality. *Lass*, 228 N.W.2d at 771; *State v. Albers*, 174 N.W.2d 649, 651 (Iowa 1970).

In the present case, the photographs in question were relevant and material in illustrating the testimony of the assistant medical examiner with respect to the victim's cause of death. In addition, the nature, extent and severity of the wounds which are indicated in the photographs bore on the character of the assault and the intent of the assailant. Even if defendant's involvement in the crime was that of an aider and abettor, the intent of the primary perpetrator is a material element for the jury's consideration. *See State v. Lott*, 255 N.W.2d 105, 109 (Iowa 1977).

In some circumstances, probative value may be outweighed by the prejudicial nature of the photographs in which case they should be excluded even though relevant and material. *State v. Fuhrmann*, 257 N.W.2d 619, 624–25 (Iowa 1977). Examination of the photos does not suggest that this was true in the present case. We conclude that the trial court did not abuse its discretion in admitting the photographs into evidence.

III. *Sufficiency of the Evidence.*

Defendant also challenges the sufficiency of the evidence to sustain a conviction of murder in the first degree. Our review of this issue is not de novo. *State v. Phams*, 342 N.W.2d 792, 795 (Iowa 1983).

The jury's verdict is binding upon a reviewing court unless there is an absence of substantial evidence in the record to sustain it. *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981). In making this determination, we consider the whole record, *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980), including that evidence which is favorable to defendant or detracts from the weight of the State's case. Where the evidence is in conflict, however, the jury is empowered to resolve those conflicts in accordance with its own views as to the credibility of the witnesses. *State v. Jones*, 271 N.W.2d 761, 763 (Iowa 1978).

Reviewing the record in the present case, we find that the jury was presented with sufficient credible evidence to permit it to find that defendant aided and abetted his brother Billy Allen and Reimers in the perpetration of a robbery in which the victim was knowingly, willfully murdered with premeditation and malice aforethought. The record further supports a jury finding that if this was not the intention of defendant, it was the intention of Billy Allen, and defendant had been made aware of that intention. Under the holding in *Lott*, 255 N.W.2d at 109, this is sufficient to support a finding of defendant's guilt as a principal. We find the evidence was sufficient to sustain the conviction. The trial court did not err in overruling defendant's motion for a directed verdict of acquittal.

IV. *Ineffective Assistance of Counsel.*

Finally, defendant alleges several particulars in which he claims he was denied effective assistance of trial counsel. These include his claims that trial counsel: (1) failed to file a motion to suppress statements made to the police; (2) failed to file a motion for change of venue; (3) failed to resist expanded media coverage of this case; (4) failed to call certain witnesses

desired by defendant; (5) failed to adequately consult with defendant in the preparation of a trial strategy; and (6) failed to correct misstatements of the record made by the prosecutor during closing argument. Upon our review of the record, we resolve items (1), (3) and (6) against defendant on his direct appeal on the ground that he has shown neither a breach of essential duty nor requisite prejudice required for the granting of relief under the standards set forth in *State v. Miles*, 344 N.W.2d 231, 233–34 (Iowa 1984). The other charges of ineffective assistance of counsel relate to matters which cannot be determined from the record available on direct appeal. Relief, if any, with respect to those claims of ineffective assistance of counsel may only be determined on an application for post-conviction relief.

We have considered all issues presented and find no basis for reversal of defendant's conviction and sentence. The judgment of the district court is affirmed.

AFFIRMED.