Samuel Jerome ORIGER, Appellee,

v.

STATE of Iowa, Appellant.

No. 91–1375.

Court of Appeals of Iowa.

Nov. 30, 1992.

Bonnie J. Campbell, Atty. Gen., Bruce Kempkes, Asst. Atty. Gen., and Ted Hovda, County Atty., for appellant.

David E. Grinde, Asst. Public Defender, Cedar Rapids, for appellee.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Presiding Judge.

The State appeals from a judgment of the district court reversing and remanding the defendant's conviction for first-degree murder on the ground that his trial counsel provided ineffective assistance.

The defendant, Samuel Jerome Origer, was a known drug user and cocaine dealer in the Iowa Falls area for "the Greeks," Zois and Aris Sklavenitis, several of the area's biggest drug dealers. Robb Johnson was a farmer and mid-level cocaine dealer for the Greeks. Johnson would receive weekly shipments of cocaine from the Greeks and then distribute his cocaine to several lower-level dealers, including Origer.

According to the State, on February 9, 1985, Johnson went to see Origer at his apartment. He allegedly gave Origer some cocaine and demanded he pay his past due bill, but Origer refused to pay anything. Johnson allegedly told Origer he was supposed to meet with the Greeks later that evening to pay them for the cocaine previously fronted to him, a debt of about $3,000. The DCI investigation revealed Johnson had made statements that the Greeks had an enforcer who made it a practice of "breaking people's legs" if they had not paid the debts owed to the Greeks.

Johnson then left Origer's apartment, after allegedly arranging to meet Origer later that day to receive payment for the cocaine he had just delivered. Origer then went out to try to sell some of the cocaine to raise money to pay his bill.

Robb Johnson and his wife, Jennifer, returned to their home that same Saturday. No one saw Robb or Jennifer alive or heard them speak after about 6:30 p.m. According to Zois Sklavenitis, he called Robb at

approximately 7:15 p.m. that evening, but a male voice answered the telephone and stated the Johnsons were not at home. While Zois was unable to conclusively identify the voice, he indicated in a DCI interview that the voice resembled a person he knew as "Bubba," a nickname for Terry Eenhuis. He did not identify the voice as belonging to Origer. Jennifer's body was found in her room the next day.

Robb's body was found three weeks later in a ditch next to a house owned by friends of Origer. About nine months after the murders were discovered, Origer was arrested and charged with the first-degree murders of Robb and Jennifer Johnson.

At trial, the State introduced the testimony of two of Origer's friends who testified Origer had personally told them he had killed Robb Johnson. On cross-examination, both witnesses admitted they were intoxicated and high at the time of the alleged conversations. The State also introduced testimony from Todd Behrends. Behrends, a high school student, had been staying with Origer's parents from May to August of 1985. Behrends testified Origer had told him he had killed two people in connection with a drug deal while he was stationed with the Marines in California.

While Origer did not testify, he presented several alibi witnesses who testified Origer was at his parents' home in Estherville on the night of the murders. Origer's wife claimed she, Origer, and their child left home at 6:00 p.m., stopped in Algona for dinner, and arrived in Estherville between 7:00 p.m. and 8:00 p.m. During their visit; Origer's mother did Origer's taxes and his father and brother helped install a new carburetor in Origer's car. Origer also gave his mother money to pay some bills because his checking account was closed. They allegedly stayed in Estherville until late the next day.

During the prosecutor's cross-examination of Origer's wife, Karen Origer, the prosecutor asked the following questions and received the following answers:

Q: Is your husband a nice peaceful man?

A: Sometimes.

Q: Has he ever injured you?

A: Yes.

Q: Smashed your head through a window once, didn't he?

A: Yes.

In May 1986, the jury found Samuel Origer guilty of the first-degree murders of Robb and Jennifer Johnson. On appeal, the court of appeals reversed Origer's conviction on Jennifer Johnson's murder based on insufficient evidence and affirmed Origer's conviction for Robb's murder. *State v. Origer*, 418 N.W.2d 368 (Iowa App.1987). Further review was denied in January 1988.

Origer subsequently filed the present application for postconviction relief. He asserted four grounds for relief: (1) ineffective assistance of counsel at the trial and appellate levels, (2) prosecutorial misconduct, (3) newly discovered evidence, and (4) insufficient evidence.

At the postconviction hearing, much of the evidence showed defense counsel relied extensively on the State's investigations and did not conduct a thorough investigation of its own. There was evidence that a Michael Mallory of Iowa Falls had bragged to several witnesses he was the one who committed the murders. However, defense counsel never went to Iowa Falls to conduct an investigation or to follow up on this evidence. Defense counsel also never conducted an independent investigation to determine whether there was any validity or substance to the statements made by Todd Behrends at trial.

In August 1991, following the postconviction hearing, the district court reversed Origer's conviction for Robb's murder on the ground that his trial counsel provided ineffective assistance. The court found trial counsel's performance was deficient in the investigation, particularly as to the alleged murders in California and the statements regarding Mike Mallory. The court also found counsel was deficient in failing to object to the testimony about Origer's proclivity for violence with his wife. The district court rejected Origer's other claims. The State has appealed and Origer has cross appealed.

The State contends Origer waived any specific issues of ineffective assistance since he failed to raise such issues on direct appeal. The State claims defense counsel's investigation was reasonable and defense counsel failed to object to various offers of evidence on the basis of trial strategy. The State further claims any incompetency by trial counsel did not prejudice Origer.

In his cross-appeal, Origer contends he was denied a fair trial by prosecutorial misconduct and newly discovered evidence requires the reversal of his conviction.

■ Ordinarily, our review of postconviction relief proceedings is for errors of law. *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980). However, when a postconviction petitioner asserts violation of constitutional safeguards—such as ineffective assistance of counsel—we make our own evaluation based on the totality of the circumstances. This is the equivalent of de novo review. *Id.*

I. *Ineffective Assistance of Counsel.* The State contends the district court erred in concluding Origer received ineffective assistance of trial counsel.

■ The State first argues error was not preserved. Here, the claim that Origer received ineffective assistance of trial counsel was not raised in the brief filed by the appellate defender's office. However, Origer raised the issue of ineffective assistance of counsel in the pro se brief which was filed with his appeal. In response to Origer's pro se brief, the State had filed a motion to strike the brief, asserting ineffective assistance claims were best preserved for postconviction relief. Although the State's motion was denied, the ineffective assistance of counsel claim was never addressed in the direct appeal by the court of appeals.

We find error was sufficiently preserved by Origer's pro se brief and the district court correctly concluded it was appropriate to address the issues concerning ineffective assistance of trial counsel.

Established principles govern our review of appellant's sixth amendment claim his counsel was ineffective. When considering this claim, our ultimate concern is with "the fundamental fairness of the proceeding whose result is being challenged." *Strickland v. Washington*, 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984). In deciding this, we must consider whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93. "In examining counsel's conduct we review de novo the totality of relevant circumstances." *State v. Risdal*, 404 N.W.2d 130, 131 (Iowa 1987) (citations omitted). "Defendant bears the burden of proving by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) prejudice resulted." *Id.* at 131–32.

■ In proving the first prong of this test, Origer must overcome the strong presumption counsel's actions were reasonable under the circumstances and fell within the normal range of professional competency. *State v. Hildebrant*, 405 N.W.2d 839, 841 (Iowa 1987). To prove the second prong of this test, Origer must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

■ The district court found Origer's counsel provided ineffective representation based upon (1) the failure to conduct an independent investigation of the testimony of Todd Behrends, (2) the lack of an independent investigation of the incidents and persons in Iowa Falls, and (3) the failure to object to the prosecutor's cross-examination of Karen Origer. We agree.

A. Failure to Conduct an Independent Investigation of the Testimony of Todd Behrends. The State first argues the admission of the testimony of Todd Behrends was part of defense counsel's reasonable trial strategy.

Prior to trial, defense counsel learned of Todd Behrends and his alleged California murder story both from the DCI interview report and from the minutes of testimony. However, counsel did not conduct an independent investigation to determine whether there was any validity or substance to those statements. That is, defense counsel never tried to determine whether a murder, involving drugs and within close proximity to Origer, had occurred while Origer was in the Marines.

During the State's direct examination of Behrends, the prosecutor asked whether Origer had ever told Behrends that he had killed somebody. The State knew Origer had never told Behrends he had killed the Johnsons, and that he had told Behrends the persons he had killed were in California.

On cross-examination, the defense then elicited from Behrends the fact this alleged murder occurred in California. However, defense counsel also elicited further details of this murder from Behrends, including the fact that Origer told Behrends that he had killed two people, that the incident occurred while he was in the Marines, that he had shot them with a gun, that he was paid for the murders and that the murders were related to cocaine. At the postconviction hearing, defense counsel characterized this thorough questioning of Behrends as part of the trial strategy. By eliciting this information, defense counsel was attempting to show Origer's propensity to brag about killing people.

Unfortunately, by having elicited that testimony from Behrends about Origer's propensity to brag, the State was then able to introduce rebuttal evidence through Chief Book. Chief Book testified informants had told California police that, during the time Origer was a Marine, a Marine had indeed killed two people and the killings involved cocaine.

At this point, the defense counsel was in a dilemma. In its ruling, the district court noted:

> [Defense c]ounsel could have objected on a hearsay basis, and such objection would have been meritorious. However,

the State was entitled at that juncture to present evidence in rebuttal of the implication defense counsel was attempting to make in Todd Behrends' cross-examination, namely that Origer was bragging about the California murders and that Origer's statements had no basis in reality or in actual events that occurred in California. If the State could not get at this rebuttal evidence through Chief Book's hearsay testimony, it likely could have called people in California with actual knowledge as to those events. Defense counsel, however, not having conducted an investigation as to the California murders, did not have any information about the California investigation.

The California murder story involved a man and a woman, death by shooting, cocaine, and money. Had the State sought to introduce such evidence of this other crime, clearly such evidence would have been objectionable on grounds of relevancy and materiality. Iowa R.Evid. 401, 402. Even if relevant and material, the probative value of such evidence would be substantially outweighed by the danger of unfair prejudice. Iowa R.Evid. 403. Such evidence would also show Origer had acted in conformity with his character and would be inadmissible under rule 404(b).

At the postconviction hearing, defense counsel indicated the decision to further cross-examine Behrends on Origer's murder story was part of the trial strategy. Therefore, the question as to whether Origer received ineffective assistance of counsel becomes whether this trial strategy was reasonable under the circumstances and fell within the normal range of professional competency. *State v. Hildebrant*, 405 N.W.2d 839, 841 (Iowa 1987).

Defense counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674, 695 (1984). *See also Schrier v. State*, 347 N.W.2d 657, 662 (Iowa 1984). The choice to cross-examine Behrends and elicit testimony about the California murders was made when no in-

dependent investigation had been conducted regarding these killings. The testimony predictably elicited rebuttal testimony from the State regarding these killings. Following the cross-examination of Behrends, two different inferences could be made: (1) Origer is likely to have committed the Johnson murders because he committed similar crimes in California, or (2) Origer was bragging about acts which had no basis in reality. Chief Books' testimony rebutted the second inference. Applying a high level of deference to counsels' judgment, we agree with the district court's conclusion that this strategic choice was unreasonable.

To be balanced against the probative value of evidence of prior bad acts or crimes, such as the alleged murders in California, are the possibilities for prejudice which accompany testimony regarding a prior offense. *State v. Cott*, 283 N.W.2d 324, 329 (Iowa 1979).

> Dean Wigmore has summarized the types of prejudice the general exclusionary rule seeks to avoid as follows: ... (1) The over-strong tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts; (2) The tendency to condemn, not because he is believed guilty of the present charge, but because he has escaped unpunished from other offenses;
> ...

*Id.* (citing 1 J. Wigmore, *A Treatise on the Anglo–American System of Evidence in Trials at Common Law* § 194, at 650 (3d ed. 1940)).

As the district court noted, this case was a "close one." Behrends' testimony on cross-examination created these two types of prejudice. This testimony allowed the jury to infer Origer had murdered previously in a method similar to that method by which Robb Johnson was murdered. We find there is a reasonable probability that, but for this error, the result of the proceeding would have been different and that Origer received ineffective assistance of counsel in this regard.

B. Failure to Conduct an Independent Investigation of the Iowa Falls Evidence. The district court also found ineffective

assistance of counsel in defense counsel's failure to conduct any investigation of the persons and incidents in Iowa Falls.

In April 1985, Lori Engleson was interviewed by the DCI. She reported that she overheard Mary Jo Payne say she knew who killed the people in Forest City. At the postconviction hearing, Mary Jo Payne testified that following Origer's arrest she saw Mike Mallory and Keven Schwebke playing pool at a bar located near Iowa Falls. She heard Schwebke accuse Mallory of the murders. According to Mary Jo Payne, Schwebke said: "He thought it was pretty funny to have a white boy take the rap for what he did and get away with it scot free." When Mary Jo Payne asked Mallory whether the allegations were true, Mallory only said "What's it to you?"

Billy Payne, Mary Jo Payne's brother, also testified at the postconviction hearing. He testified that, on February 9, 1985, Mallory, looking anxious and nervous, told him he was going to Forest City "to take care of business." Billy Payne also testified Mallory had told him several days later he had "wasted these people up in Forest City," but he believed Mallory was only bragging.

The defense counsel for Origer relied extensively on the investigations conducted by the DCI. Although the Lori Engleson statement was available to defense counsel before trial, defense counsel never conducted any independent investigations into the substance and validity of her allegations.

Again, defense counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *Strickland v. Washington*, 466 U.S. 668, 691, 80 L.Ed.2d 674, 695, 104 S.Ct. 2052, 2066 (1984). *See also Schrier v. State*, 347 N.W.2d 657, 662 (Iowa 1984). We agree with the findings of the district court that, had defense counsel followed up on the Engleson statement, defense counsel would have obtained the information set forth in the testimony of Mary Jo and Billy Payne. Such testimony would have been consistent with Origer's alibi defense and alibi testimony. We find the failure to investigate in this regard

creates a reasonable probability that, if there had been a more thorough investigation of the statements made by these persons in Iowa Falls, the result of the proceeding would have been different.

C. Failure to Object to the Cross–Examination of Karen Origer. Finally, the State contends the district court erred in finding defense counsel provided ineffective assistance by its failure to object to the prosecutor's cross-examination of Karen Origer.

The evidence that Origer "smashed" his wife's head through a window is evidence which simply went to the defendant's propensity for violence. The defense had called no witnesses to testify as to Origer's character trait for peacefulness, and therefore evidence to rebut evidence of peacefulness was inadmissible. Iowa R.Evid. 404(a)(2).

Prior to trial, defense counsel had learned of the above incident through a statement Karen had given the authorities. Nevertheless, counsel failed to file a motion in limine prior to trial to exclude the evidence and also failed to object during the prosecutor's cross-examination. Had a timely objection been made, such evidence would have been inadmissible under rule 404(a)(2)(A). We find defense counsel was deficient in its failure to object to such testimony.

Again, we consider the question of whether, absent this error, there is a reasonable probability the outcome of the proceeding would have been different. Evidence of prior bad acts and violence is indeed prejudicial, especially in a case which lacked substantial direct evidence and hinged upon the inferences such evidence would create. We agree the district court properly found ineffective assistance of counsel in this regard.

D. Failure to Adequately Investigate Origer's Alibi. Origer also contends he received ineffective assistance by counsel's failure to follow up on other evidence surrounding his alibi. Defense counsel failed to retrace Origer's steps from the night in question, failed to interview an independent witness who could have corroborated the Origer family members' testimony, failed to interview the employees at the Algona restaurant where the Origer family had allegedly dined that evening on their way to Estherville, and failed to introduce other alleged exculpatory evidence.

We agree defense counsel was deficient in its failure to investigate these areas as well. However, at trial, substantial evidence of Origer's alibi was presented by Origer's mother, Origer's father, Origer's wife, and Origer's brother who all testified Origer was in Estherville the evening of February 9, 1985. We agree with the findings of the district court that Origer did not show there was a reasonable probability that, if there had been a more thorough investigation of the alibi, the result of the proceeding would have been different.

However, upon review of the record, it appears counsel's performance was deficient in several areas and Origer was denied a fair trial by those errors. We note the language of the district court:

> The "reasonable probability" test enunciated by *Strickland* recognizes that not all errors mean Defendant did not get a fair trial. It does recognize that the error must be placed in the context of the evidence against the Defendant. Where the evidence against the Defendant is overwhelming, a specific error may be unlikely to affect the result. Where the evidence against the Defendant is not overwhelming, however, and the case is "close," the same error may result in a reasonable probability that a different result would obtain.

We affirm the judgment of the district court finding Origer received ineffective assistance of counsel, setting aside the conviction of Origer, and granting him a new trial.

**II. *Prosecutorial Misconduct.*** In his cross-appeal, Origer contends he was denied a fair trial by the misconduct of the prosecutor. The State contends Origer failed to preserve error on this issue.

In the court's ruling on Origer's application for postconviction relief, the district court found Origer had failed to preserve this issue for postconviction. Here, the

claim that there was prosecutorial misconduct was not raised on direct appeal and was not raised in Origer's pro se brief. Any claim not properly raised at trial or on direct appeal may not be litigated in postconviction unless the defendant can establish, by a preponderance of the evidence, both "sufficient reason" for not having raised the issue at trial and on direct appeal, and actual prejudice resulting from such error. *Jones v. State*, 479 N.W.2d 265, 271 (Iowa 1991). Ineffective assistance of appellate counsel is sufficient reason for failing to raise an issue on direct appeal. *Washington v. Scurr*, 304 N.W.2d 231, 235 (Iowa 1981).

We do not make a finding that Origer received ineffective assistance of appellate counsel. In addition, there are no facts known to Origer regarding this claim which were not known at the time of the direct appeal. Therefore, we hold Origer has not shown a sufficient reason for the failure to raise the issue of prosecutorial misconduct on his direct appeal.

III. *Newly–Discovered Evidence.* Finally, Origer contends there exists newly-discovered evidence not previously presented which requires a reversal and remand of his conviction.

 To prevail on a motion for a new trial based on newly-discovered evidence the defendant must show that: (1) the evidence was discovered after the verdict, (2) it could not have been discovered earlier in the exercise of due diligence, (3) the evidence is material to the issues in the case and not merely cumulative or impeaching, and (4) the evidence probably would have changed the result of the trial. *State v. Allen*, 348 N.W.2d 243, 246 (Iowa 1984) (citing *State v. Gilroy*, 313 N.W.2d 513, 521–22 (Iowa 1981); *State v. Farley*, 226 N.W.2d 1, 3 (Iowa 1975)).

The newly-discovered evidence involves the Greeks' connection to Joel Smitherman and the connection between Smitherman to Richard Tassler, whose murdered body was found on Smitherman's farm in the spring of 1990. At the postconviction relief trial, evidence was introduced which showed at the time of the murder the Greeks lived with a Kathy Rainbarger. It was from Kathy's home that Zois Sklavenitis called the Johnson residence on February 9, 1985 and spoke with the unfamiliar voice, believed to belong to "Bubba." Phone toll records showed a number of phone calls were made from the Rainbarger residence to Smitherman at a time proximate to the Johnson murders. Origer contends at the time of trial there was no indication of the magnitude of the relationship between Smitherman and the Greeks.

We are not persuaded the admission of the above evidence would probably change the result if a new trial were granted solely on the grounds of this newly-discovered evidence. The above evidence does not raise a fair inference that another person was responsible for the death of Robb Johnson. We find the district court properly rejected Origer's claim for postconviction relief on the ground of newly-discovered evidence.

In sum, we do not find Origer is entitled to a new trial on the basis of prosecutorial misconduct or newly-discovered evidence. However, as the district court recognized, this case is indeed a "close one." We do find Origer received ineffective assistance of trial counsel based upon defense counsel's failure to conduct an adequate investigation and counsel's failure to object to the State's cross-examination of Karen Origer. Origer is not entitled to a perfect trial; he is entitled to a fair trial. Based upon the ineffective assistance of counsel Origer received, we are convinced Origer did not receive a fair trial.

The costs of this appeal are taxed to the State.

For all the reasons stated, the judgment of the district court setting aside Origer's conviction and granting him a new trial is affirmed.

AFFIRMED.