# IN THE COURT OF APPEALS OF IOWA

No. 23-0658
Filed June 5, 2024

**GARY CHARLES WOOD JR.**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Coleman McAllister, Judge.

An applicant appeals the denial of his application for postconviction relief. **AFFIRMED.**

Gregory F. Greiner, West Des Moines, for appellant.

Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Badding and Buller, JJ.

**BADDING, Judge.**

Three years after he pled guilty to a reduced charge of second-offense domestic abuse assault, Gary Wood Jr. applied for postconviction relief. His claims were based on a victim impact statement filed by the State before his guilty plea. In the statement, the victim said that in the weeks before the assault, she had been off her medications, "under p[sych]osis," and "reliving flashbacks," but she now "believe[d] that the cops + Gary were trying to help me not kill me." At the hearing on his application, Wood testified that he did not know about this recantation before he pled guilty. The district court found Wood was not credible and rejected his claims of ineffective assistance of counsel and prosecutorial misconduct.

Wood appeals, claiming (1) defense counsel was ineffective "[b]y not strengthening his case with supportive evidence and effectively impeaching the alleged victim's statement"; and (2) the prosecutor committed misconduct by "continuing with a prosecution and threatening more serious sanctions, when the victim clearly recanted." We review these constitutional claims de novo. *See Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021) ("We review postconviction proceedings that raise constitutional infirmities de novo." (cleaned up) (citation omitted)); *State v. Plain*, 898 N.W.2d 801, 810, 818 (Iowa 2017).

I.    *Ineffective Assistance of Counsel*

To establish his claim of ineffective assistance,[1] Wood must show that (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Strickland*

---

[1] While a guilty plea normally waives claims of ineffective assistance of counsel, "an exception to this rule exists when there are pre-plea 'irregularities intrinsic to

*v. Washington*, 466 U.S. 668, 687 (1984); *State v. Lopez*, 907 N.W.2d 112, 116 (Iowa 2018). We "may consider either the prejudice prong or breach of duty first, and failure to find either one will preclude relief." *State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017) (citation omitted).

Wood was arrested in April 2017 and charged by trial information with one count of domestic abuse assault by impeding breathing or circulation of blood causing bodily injury, as a habitual offender; two counts of second-offense domestic abuse assault; and one count of first-degree harassment. After Wood's arrest, the jail recorded about fifty calls between him and the victim in violation of the no-contact order that had been entered. On May 12, the State filed a victim impact statement in which the victim explained that without her mental-health medications,

> I thought the police and Gary were out to harm me. . . . I remember day 4 without meds I tried to attempt suicide. Gary helped me from harming myself. I do remember several times He calmed me down, slowed my breathing, helped me come back to reality, and made me smile.

In June, Wood filed a written guilty plea to one count of second-offense domestic abuse assault. In exchange, the State agreed to dismiss the remaining charges; not pursue charges for the no-contact order violations; and recommend a suspended sentence and probation to run concurrently with the sentence in another case. The court accepted Wood's plea and sentenced him under the terms of the plea agreement. Wood was released from jail and did not file an

---

the plea—irregularities that bear on the knowing and voluntary nature of the plea.'" *Horton v. State*, 966 N.W.2d 663, 666 (Iowa Ct. App. 2021) (quoting *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011)).

appeal. But in August, Wood's probation was revoked, and he was ordered to serve his two-year sentence.

Wood filed a pro se application for postconviction relief in January 2020, claiming: "I had a notarized affidavit from the alleged victim recanting her story." At the hearing on his application in February 2023, Wood testified the "notarized affidavit" was the victim impact statement, which was not actually notarized. He explained: "Once I got out, I was told by [the victim] that, 'Hey, look, this is what I sent.' And I thought the notarized part sounded good, so I just added it for effect." When asked whether he lied to the judge by admitting the assault in his written guilty plea, Wood replied: "Yeah. Absolutely." Wood maintained that he would not have pled guilty if he had known about the victim impact statement.

The State, however, offered a letter from Wood's private investigator into evidence that stated: "[T]here was an affidavit from his girlfriend recanting the statements but yet he still pleaded guilty. He stated that even though he had the affidavits, he did not feel confident." And Wood agreed at the postconviction hearing that his guilty plea was motivated by avoiding charges for violating the no-contact order: "[I]t just becomes what can be manageable for me. So you got to give a little to receive a little. Guilt and innocence isn't really a part of it."

The district court held the record open after the hearing so that the parties could submit depositions of Wood's defense attorney and the prosecutor. Those depositions were filed in March, along with a handwritten letter from the victim dated May 8, 2017. The letter is difficult to track, but from the parts that can be pieced together, the victim stated that she got drunk in a bar, verbally abused other patrons, and got hit in the face, after which Wood tried to help her.

At his deposition, defense counsel testified that he vaguely remembered the victim impact statement.[2]  He explained that his office's policy at the time would have been to send a copy of any e-filed documents to the client.  Counsel testified that victims of domestic abuse often recanted their allegations, and he agreed that "sometimes it can backfire if you take depositions of a witness that you do not know whether they're going to be cooperative or not."  *See State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006) ("[W]e will not reverse where counsel has made a reasonable decision concerning trial tactics and strategy." (citation omitted)).  He recalled that the State had compelling evidence of Wood violating the no-contact order, and the State's agreement to not pursue those violations was a heavy concession in plea negotiations.  *See Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021) ("To satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial." (cleaned up) (citation omitted)).

> In denying Wood's ineffective-assistance claim, the district court found
>
> that the only support for Wood's claim that he was unaware that the victim had made statements that either undercut or recanted her prior allegations before he pleaded guilty are his own self-serving statements.  The Court does not find Wood's testimony to be credible on this point in light of the conflicting evidence and his other history of embellishment.  Consequently, the Court concludes that Wood has not met his burden of proving that his attorney breached an essential duty to Wood.
> To be clear, even if the Court would have concluded that Wood had established a breach, there has simply been no showing of prejudice. . . .

---

[2] Counsel was not asked about the May 8, 2017 letter from the victim, and there is no evidence that he knew about it.

. . . . [T]he record reveals that Wood and the victim had approximately 50 recorded phone calls from the time of his arrest to when he pleaded guilty. The prosecutor indicated that during these calls, Wood discussed the victim's trial testimony. The Court has no doubt that Wood made the decision to plead guilty in order to avoid being exposed to the possibility of a long prison sentence. Wood received a substantial benefit by pleading guilty—he avoided prison and was given a suspended sentence, probation[,] and an opportunity for treatment. Three serious charges were dismissed. He avoided a felony conviction. In fact, it was not until his probation was revoked and he was incarcerated that he raised these claims.

We defer to the court's credibility finding, *see Sothman*, 967 N.W.2d at 522, and find its conclusions are supported by the record upon our de novo review. We accordingly reject this ineffective-assistance claim. *See Roby v. State*, No. 20-0312, 2021 WL 211141, at *2 (Iowa Ct. App. Jan. 21, 2021) (finding no breach or prejudice on applicant's claim that defense counsel was "ineffective in allowing him to plead guilty following the victim's purported recantation of her allegations").

## II. Prosecutorial Misconduct

Wood next claims the prosecutor's decision to proceed with the prosecution despite the victim's recantation was misconduct resulting in prejudice.[3] *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003) (requiring "proof of misconduct" and "prejudice to such an extent that the defendant was denied a fair trial" for a claim of prosecutorial misconduct). We note that this claim was not decided by the district court, which framed the issue before it as whether "the State suppressed favorable or exculpatory evidence from Wood, that being evidence that the victim

---

[3] While Wood also raised a claim of prosecutorial error in district court, he only pursues prosecutorial misconduct on appeal. *See State v. Schlitter*, 881 N.W.2d 380, 393–94 (Iowa 2016) (distinguishing between claims of prosecutorial error and prosecutorial misconduct).

had recanted her allegations."[4]  Bypassing this error-preservation concern, *see State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999), we find that Wood's retooled claim fails on its merits.

In his deposition, the prosecutor explained that he considered the recantation and gave reasons why he was skeptical of it, including its inconsistency with the police report and the jail phone calls he had listened to between Wood and the victim.  The prosecutor was within his right to be suspicious of the recantation.[5]  *See, e.g.*, *Payton v. State*, No. 08-0833, 2003 WL 1051276, at *1 (Iowa Ct. App. Mar. 12, 2003) ("[R]ecantations are looked upon with suspicion."). The prosecutor also explained recantations are common in domestic violence cases, so he couldn't automatically take the recantation at face value.  *See, e.g.*, *State v. Smith*, 876 N.W.2d 180, 187–88 (Iowa 2016) ("[T]he underlying dynamics of domestic abuse can create many obstacles in the criminal prosecution of perpetrators.  These complex dynamics can lead many victims to . . . the recantation of statements . . . prior to trial.").

---

[4] We also note that Wood has not argued that he had "sufficient reason" or "cause" for not raising this prosecutorial-misconduct claim before these postconviction-relief proceedings as required by Iowa Code section 822.8 (2020), although the State did not challenge his claim on that basis in district court or on appeal.  *See, e.g.*, *Johnson v. State*, No. 18-0983, 2020 WL 1049779, at *6 (Iowa Ct. App. Mar. 4, 2020) ("In order to raise prosecutorial-misconduct claims as part of [postconviction-relief] proceedings that were not raised on direct appeal a claimant must show 'sufficient reason' or 'cause' for not doing so." (citation omitted)); *see also Origer v. State*, 495 N.W.2d 132, 139 (Iowa Ct. App. 1992) ("Any claim not properly raised at trial or on direct appeal may not be litigated in postconviction unless the defendant can establish, by a preponderance of the evidence, both 'sufficient reason' for not having raised the issue at trial and on direct appeal, and actual prejudice resulting from such error.").

[5] The victim gave different stories in her impact statement, her handwritten letter, and in a statement to the private investigator.  She also refused to testify at the postconviction-relief hearing.

On this record, the prosecutor's decision to proceed with the case against Wood despite the recantation was not a "reckless disregard of a duty to comply with the applicable legal standard or obligation." *State v. Coleman*, 907 N.W.2d 124, 139 (Iowa 2018). We accordingly find no prosecutorial misconduct and reject this claim.

**AFFIRMED.**